IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

PATRICIA CHAMBERS, on her own behalf and
As next friend on behalf of the minor child
S.W.

                         PLAINTIFF

v.                                                                     CIVIL NO. 1:19-CV-093-GHD-DAS

STEPHANIE GREEN-STUBBS and
STEFANY'S VOCAL & PERFORMANCE TRAINING STUDIOS LLC,

                         DEFENDANTS

## MEMORANDUM OPINION ON DAMAGES

      This matter arises from a Complaint filed by the Plaintiff in which she alleged against the Defendants a claim for copyright infringement and sought from the Court a declaratory judgment of fraudulent copyright registration [1]. The Defendant failed to respond to the Plaintiff's Complaint, and the Plaintiff filed a Motion for Default Judgment [13]. The Court now rules on the subject of damages. For the reasons discussed herein, the Plaintiff's request for an award of damages and attorney's fees [1] is DENIED and the Plaintiff's request for injunctive relief [1] is GRANTED.

### I.    Procedural Posture

      On May 13, 2019, the Plaintiff filed her Complaint against the Defendants alleging a claim for copyright infringement and seeking from the Court a declaratory judgment of fraudulent copyright registration [1]. Defendant Stephanie Green-Stubbs, acting in a pro se capacity and identifying herself as Stephanie Denise Stubbs, filed a Motion for Additional Time on July 31, 2019, on her own behalf and on behalf of Defendant Stefany's Vocal & Performance Training Studios, LLC [7]. The Plaintiff opposed the motion [8]. The Court granted the Defendant's

1

motion, giving her an additional fourteen days to file her answer to the Plaintiff's Complaint and giving Defendant Stefany's Vocal & Performance Training Studios, LLC, another twenty-eight days to file an answer through a licensed attorney [9]. Defendant Green-Stubbs filed a notice of change of pro se address with the Court on September 23, 2019 [10]. The Defendants failed to file an answer to the Plaintiff's Complaint, or provide any explanation for this failure to answer.

On October 23, 2019, the Plaintiff filed a Motion for Entry of Default [11], and the clerk entered a Default against the Defendants on October 24, 2019 [12]. On February 21, the Plaintiff filed a Motion for Default Judgment [13], along with a corresponding Memorandum in Support of Plaintiff's Motion for Default Judgment [14]. The Court granted the Plaintiff's Motion for Default Judgment on March 11, 2020 [15]. After being rescheduled twice due to the COVID-19 pandemic [16; 17; 18; 19; 20; 21], a hearing on damages was held on September 17, 2020 [22; 24; 25].

## II. **Factual Background**

The Plaintiff alleged the following facts in her Complaint and in her Memorandum in Support of Plaintiff's Motion for Default Judgment [1; 14]. Since this Court granted the Plaintiff's Motion for Default Judgment [15], her well-plead allegations are taken as admitted. *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *CENTRIA v. Alply Architectural Bldg. Sys., LLC*, No. 4:11-CV-79-CWR-LRA, 2012 WL 73235, at *4 (S.D. Miss. Jan. 10, 2012) (citation omitted).

At some point prior to this lawsuit, the Plaintiff, a songwriter, adopted her granddaughter S.W. after the death of her parents [1, ¶ 4]. In October 2016, the Plaintiff hired Defendant Green-Stubbs as S.W.'s vocal coach [1, ¶ 5]. On or about February 24, 2017, the Plaintiff and thirteen-year-old S.W. created the melody and lyrics for their song "Shake Rag," and the Plaintiff had the

2

lyrics notarized at Farmers and Merchant's Bank in Mooreville, Mississippi, as was her habit as a songwriter [14, at 3; 1-2]. The Plaintiff then approached Defendant Green-Stubbs about teaching S.W. to sing "Shake Rag" [14, at 3]. Shortly thereafter, the Defendant publicly acknowledged on social media that the Plaintiff and S.W. created the song [*Id.*; 1-3].

On April 11, 2017, S.W. and Defendant Stubbs-Green recorded the vocals for the song together after the Defendant claimed that S.W. was too inexperienced to perform alone [1, ¶¶ 9-10]. At the recording studio, four musicians wrote sheet music based on S.W.'s melody, and used this sheet music to accompany the singers S.W. and Defendant Green-Stubbs [14, at 2]. At the end of the session, the studio gave the recording, saved on a USB drive, to Defendant Green-Stubbs, who also took the sheet music created by the four musicians [*Id.*]. The Plaintiff and the Defendant split the costs of the recording studio session and the payment to the musicians that accompanied the singers [1, at ¶ 9].

On April 19, 2017, Defendant Green-Stubbs fraudulently applied for registration of the song "Shake Rag" with the U.S. Copyright Office [14, at 3]. She listed herself as the sole owner of the song, as well as the only creator of its music, lyrics, and vocals [*Id.*]. The U.S. Copyright Office granted a copyright registration, Registration No. SRu001299941, to Defendant Green-Stubbs for the song, which she titled "Shake Rag... Not Forgotten!" [*Id.*]. In May 2017, the Plaintiff discovered that the Defendant was claiming ownership of the song "Shake Rag," and then formally terminated the Defendant from her position as S.W.'s vocal coach [1, ¶ 12]. In June 2017, S.W. recorded another version of the song, this time without the Defendant's vocals and with new music created by youth pastor Patrick Devaughn [*Id.* at ¶ 13]. The Plaintiff and S.W. uploaded the new version of the song to Soundclick, an online music-sharing platform [*Id.*]. The

3

song became Soundclick's number-one song in the Rockabilly and Country Music category, and held that ranking for over two months [*Id.*].

Defendant Green-Stubbs then filed a Digital Millennium Copyright Act (DMCA) takedown notice with Soundclick against S.W., which caused the removal of S.W.'s song from Soundclick's website [*Id.*]. The Defendant also filed a DMCA takedown notice with YouTube.com against S.W. [14, at 4]. Defendant Green-Stubbs publicly performed "Shake Rag" several times, beginning with the 2017 Tupelo Elvis Festival, and claimed the song as her own at these performances [1, ¶14]. On August 6, 2017, the Defendant began selling the April recording of the song, which featured S.W.'s vocals, on iTunes, Amazon Music, and other digital music outlets [*Id.*]. In September of that year, the song was featured in a film about Elvis Presley titled "A Boy from Tupelo" and produced by Blue Magnolia Films [*Id.*]. The film credits Defendant Green-Stubbs as the composer of the song [*Id.*]. It also contains footage of Defendant Green-Stubbs singing the song and dancing with a group of children [1, ¶ 15]. The film has been distributed to elementary schools in Mississippi [*Id.*]. The Defendant continues to distribute the song [14, at 3].

The Plaintiff and S.W. received two copyright registrations in this case. The first, which covers the words to the song "Shake Rag," has an effective date of registration of October 31, 2017 [13-2]. The second copyright registration, which covers the sound recording, lyrics, and music for the song, has a date of first publication of August 6, 2017, and an effective date of registration of June 4, 2018 [1, ¶ 16; 1-4; 13-3]. On April 9, 2019, the Plaintiff and S.W. sent a letter to Defendant Green-Stubbs demanding that she cancel her copyright registration for "Shake Rag" and cease and desist the use of the song [1, ¶ 17; 1-5].

4

### III. <u>Legal Standards</u>

As noted above, this Court has already granted a Motion for Default Judgment in this case in favor of the Plaintiff [15], and so the remaining issues are the amount of damages and attorney's fees for which the Defendants are liable, as discussed in the Motion for Default Judgment, and the request for injunctive relief and a declaratory judgment of fraudulent copyright registration, as discussed in the complaint. During a separate hearing on the subject of damages, the Plaintiff is permitted to present evidence on the claims themselves as well as evidence pertaining to the amount of damages that she has allegedly suffered at the hands of the Defendants. *See* Fed. R. Civ. P. 55(b)(2).

#### A. Damages

A copyright infringer is liable for either (1) actual damages suffered by the copyright holder as a result of the infringement and any of the infringer's additional profits that are attributable to the infringement and not taken into account in computing the actual damages or (2) statutory damages. 17 U.S.C. § 504(a-b). Statutory damages equate to a sum of not less than $ 750 nor more than $30,000, as the court deems just, for each work for which the infringer is liable. 17 U.S.C. § 504(c)(1). When the court finds that infringement was committed willfully, the court in its discretion may increase the amount of statutory damages to a sum no greater than $150,000. 17 U.S.C. § 504(c)(2). Conversely, when the court finds that the infringer was not aware and had no reason to believe that their acts constituted a copyright infringement, the court in its discretion may reduce the amount of statutory damages to a sum no less than $200. *Id.*

However, as a general rule, no award of statutory damages or attorney's fees shall be made for "(1) any infringement of copyright in an unpublished work commenced before the effective

date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412. The Fifth Circuit has established that "[t]o recover statutory damages, a copyright owner must have registered his works prior to infringement." *Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, L.P. et al.*, 948 F.3d 261, 278 (5th Cir. 2020).

The term "publication" is defined within the context of copyright law as "distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101. "The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication" but a "public performance or display of a work does not of itself constitute publication." *Id.* As was made clear in the treatise *Nimmer on Copyrights*, the term "publication" under the 1909 Act—which originated the "publication" term of art—required the consent of the copyright owner. *See* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 4.03(A) (2019). While "the statutory definition under the current Act does not explicitly require" that the term "publication" refers to distributing copies of a work with the consent or authority of the copyright owner, "such authorization is undoubtedly implied." *Id.* at § 4.03(B). "Congress could not have intended that the various legal consequences of publication under the current Act would be triggered by the unauthorized act of an infringer or other stranger to the copyright." *Id. See also Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1026 (N.D. Cal. 2003) (quoting *Nimmer on Copyright* and referring to case law to support the "inference that an act that commences infringement does not publish an otherwise unpublished work"). The Copyright

6

Office aligns itself with Nimmer's understanding of the term "publication," defining the term "date of first publication" as "the date that copies or phonorecords of the work were first published with the authorization of the copyright owner." U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 612.4 (3d ed. 2017).

Thus, a defendant's alleged acts of infringement cannot be considered "publication" because the infringement occurred without the consent of the copyright owner and the statute implicitly requires this consent. To read the statute without the implicit requirement regarding the consent of the copyright owner would be to allow an infringer, rather than a copyright holder, to determine when the public first gains access to a work. This would impermissibly damage the copyright owner—by removing the owner's ability to control when and how they present their work to the public—and reward the infringer for their bad behavior.

"The statute contemplates the interaction of three distinct events, the date of registration, the date of first publication, and the date infringement commences. The available case law, while not directly addressing the issue, seems to indicate that if a work is unpublished and unregistered at the time of infringement, no statutory damages or attorney's fees are available despite the fact that the infringement itself may involve the unauthorized distribution of a copyrighted work." *Id.* The Seventh Circuit reached a similar conclusion. *See Harris Custom Builders, Inc. v. Hoffmeyer*, 92 F.3d 517, 52-21 (7th Cir. 1996). So did the First Circuit. *See Society of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 46 (1st Cir. 2012) (holding that unauthorized circulation of a work did not affect the ownership of the copyright).

Additionally, the term "commencement" within the context of copyright infringement refers to the first act of infringement in a series of ongoing separate infringements. *See Mason v.*

7

*Montgomery Data, Inc.*, 967 F.2d 135, 143–44 (5th Cir. 1992). Thus, if a defendant's first act of infringement occurred while the copyrighted work was still unpublished and unregistered, then the plaintiff is not entitled to statutory damages or attorney's fees, even if the defendant's second act of infringement occurred during the three-month window between the date of first publication of the plaintiff's copyrighted work and the effective date of registration of that work's copyright.

Additionally, 17 U.S.C § 412 "bars statutory damage awards when a defendant violates one of the six exclusive rights of a copyright holder preregistration and violates a different right in the same work after registration." *Southern Credentialing Support Services, L.L.C. v. Hammond Surgical Hospital, L.L.C.*, 946 F.3d 780, 786 (5th Cir. 2020). "[I]t remains the case that Congress prohibited statutory damages when 'any infringement' precedes registration. Maintaining this rule even when the infringements are 'different in kind' promotes the incentive for early registration that Congress created." *Id.* at 787 (quoting *Qualey v. Caring Ctr. of Slidell*, 942 F. Supp. 1074, 1077 (E.D. La. 1996)).

### B. Fraud on the Copyright Office

Making a false representation to the Copyright Office is a criminal offense, not a private right of action. *See Too, Inc. v. Kohl's Department Stores, Inc.*, 210 F. Supp. 2d 402, 405 (S.D.N.Y. 2002). *See also Pastime LLC v. Schreiber*, — F. Supp. 3d —, 2017 WL 6033434, at *3–4 (S.D.N.Y. Dec. 5 2017) ("Nothing in the Copyright Act, nor any other federal statute, grants federal courts the power to cancel or nullify a copyright registration.... The Court notes, however, that the absence of a cause of action for fraud on the Copyright Office comports with the absence of a cause of action for cancellation of a copyright registration.") *and Malibu Media, LLC v. Doe 1*, 2013 WL 5603275, at *4 (quoting the treatise *Patry on Copyright* to hold that "[f]raud on the

8

Copyright Office is not an independent claim, but rather an attack on the *prima facie* validity provided under Section 410(c)"). "Holding that federal courts have the authority to cancel registrations would essentially be declaring that the judicial branch has the authority to order a legislative branch agency that is not a party to the litigation to take an affirmative action." *Brownstein v. Lindsay*, 742 F. 3d 55, 77 (3rd Cir. 2014).[1] However, a court may invalidate a copyright. *Id.* "A federal court's finding that a copyright is invalid, on the other hand, is a determination of ownership which does not disturb the registration of a copyright. Courts have no authority to cancel copyright registrations because that authority resides exclusively with the Copyright Office." *Id.* In the case of an allegedly fraudulent application to the Copyright Office, a court must seek guidance from the Copyright Office, as discussed in 17 U.S.C. § 411(b)(1–2), which states:

> (1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless--
>    (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
>    (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.
> (2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(1-2).

---

[1] Article I, Section 8, Clause 8 of the U.S. Constitution grants Congress the power to establish and maintain a system for registering and overseeing copyrights. U.S. Const. art. I, § 8, cl. 8. The U.S. Copyright Office is under the auspices of the Library of Congress, and is thus part of the legislative branch of government. 17 U.S.C. § 701; *see also* U.S. Copyright Office, Circular 1a: A Brief Introduction and History, https://www.copyright.gov/circs/circ1a.html#:~:text=As%20a%20service%20unit%20of,the%20legislative%20branch%20of%20government.

"Instead of relying solely on the court's own assessment of the Register's response to an inaccuracy, the statute obligates courts to obtain an opinion from the Register on the matter." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F. 3d. 616, 623 (7th Cir. 2013). *See also Olem Shoe Corp. V. Washington Shoe Co.*, 2010 WL 3505100, at *2–6 (S.D. Fl. 2010). The Court is not bound by the Register's opinion. *See Schenck v. Orosz*, 105 F.Supp.3d. 812, 818 (M.D. Tenn. 2015).

While a court lacks the power to cancel a copyright registration, it can issue an order directing a party in a copyright infringement lawsuit to request from the Copyright Office that the Office cancel the party's own copyright registration through the voluntary cancellation procedure dictated by the Copyright Office. *See* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 1807.4(F) (3d ed. 2017) (discussing court-ordered cancellations of a copyright registration). Additionally, the Code of Federal Regulations discusses the cancellation of a completed registration:

> Where registration has been made for a work which appears to be copyrightable but after registration the Copyright Office becomes aware that, on the administrative record before the Office, the statutory requirements have apparently not been satisfied, or that information essential to registration has been omitted entirely from the application or is questionable, or correct deposit material has not been deposited, the Office will correspond with the copyright claimant in an attempt to secure the required information or deposit material or to clarify the information previously given on the application. If the Copyright Office receives no reply to its correspondence within 30 days of the date the letter is sent, or the response does not resolve the substantive defect, the registration will be cancelled.

37 C.F.R. § 201.7(c)(4).

## IV. Analysis

### A. The Plaintiff Has Failed to Prove Why She Is Entitled to Statutory Damages, in Light of 17 U.S.C. § 412

Based on the uncontroverted statements in the record and the fact that the Court is bound to accept all well-plead allegations as admitted in this case due to the Default Judgment issued by this Court, it is clear that the owner of the copyright for the words for the song "Shake Rag" are the Plaintiff and S.W. Additionally, the record shows that Defendant Green-Stubbs falsely claimed ownership of this work in her application for copyright registration, and infringed on the Plaintiff's copyright by performing, reproducing, distributing, and creating derivatives of the Plaintiff's work without her authorization.

As noted above, 17 U.S.C. § 412—which relates to the applicability of statutory damages in copyright infringement cases—deals with the interaction of three specific dates: the date of first publication, the date of the commencement of infringement, and the date of registration. In the case *sub judice*, the date of registration is easiest to pin down: October 31, 2017 [13-2]. Therefore, for the Plaintiff to be eligible for statutory damages, the date of first publication must be on or after July 31, 2017, i.e. three months prior to the date of registration. Additionally, the Defendant's infringement must have commenced during the time period between the date of first publication and the date of registration.

The record is unclear as to the date of first publication in this case. The Plaintiff has stated in court that the date of first publication occurred within the three months prior to the date of registration [23, at 19, l. 4-7]. However, the Plaintiff failed to provide a specific date of first publication. The Court stresses that the statute's definition of the term "publication" implicitly includes a requirement that publication occurs only with the consent of the copyright owner. *See*

11

Part III.A. Since the copyright owner obviously did not consent to the infringement of their work, the Defendant cannot trigger publication. Thus, the date that the Defendant published her infringing song on the Internet cannot be considered the date of first publication.

Looking at the record, it appears as though the Plaintiff may have intended to argue that the date of first publication for her first copyrighted work—the words to the song "Shake Rag—is the same date of first publication as their second copyrighted work—the sound recording, lyrics, and music to the song "Shake Rag" [Compare 13-2 with 13-3]. This date is August 6, 2017 [13-3]. The Court notes that the only copyrighted work at issue regarding statutory damages is the first copyrighted work. However, the Plaintiff failed to make this specific argument in court, and the Court hesitates to do so here. Even if this were the Plaintiff's intended argument, it is undercut by the fact that the Plaintiff failed to provide this publication information for her first copyright registration, suggesting that at the time of registration of the first copyright work, the work was still considered to be unpublished. Citing 17 U.S.C. § 409(8), the Compendium of Copyright Office Practices states that "[i]f the work described in the application has been published, the applicant must specify the date of publication and nation of first publication for that work." U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 612.1 (3d ed. 2017).

Moreover, it is unclear whether the publication of a sound recording of a song can be considered publication for the words of the songs themselves, in light of the fact that a sound recording is a separate copyrightable work. If the Plaintiff intended to argue that this is in fact the case, then they would have needed to provide legal support for that argument. Alternatively, the Plaintiff could have provided evidence demonstrating that printed copies of the copyrighted words

12

were distributed with the sound recording on August 6, 2017. However, the Plaintiff failed to provide this evidence. As a result, the exact date of first publication remains unclear.

Even setting this issue aside, the Plaintiff must clear a taller hurdle: the date of the commencement of the infringement. The Plaintiff made no mention of this issue in court. Moreover, the record suggests that infringement commenced prior to July 31, 2017, while the work was still unpublished. The Plaintiff's Complaint states that the Defendant "engaged in several local performances claiming 'Shake Rag' as her own, beginning with the 2017 Tupelo Elvis Festival" [1, ¶ 14]. The Court takes judicial notice of the fact that this festival occurred June 1-4, 2017,[2] and would set the date of the commencement of infringement at June 4, 2017, at the latest, depending on the date the Defendant performed.

Another question relates to the Defendant's fraudulent application to the U.S. Copyright Office, which occurred on April 19, 2017, according to the Plaintiff [1, ¶ 11]. The question is whether this fraudulent application infringed on the Plaintiff's unpublished work. To be clear, infringement occurs when an infringer violates the copyright owner's rights listed in 17 U.S.C. § 106, subject to §§ 107-122. *See* 17 U.S.C. § 501(a). Section 106 states:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> 1) to reproduce the copyrighted work in copies or phonorecords;
> 2) to prepare derivative works based upon the copyrighted work;
> 3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> 4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

---

[2] *See* W. Derek Russell, *Annual Tupelo Elvis Festival kicks off today*, DAILY JOURNAL (June 1, 2017), https://www.djournal.com/lifestyle/arts-entertainment/annual-tupelo-elvis-festival-kicks-off-today/article_28c2ca9e-4cbf-51c7-9e12-71c4af3b2915.html.

13

5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

Filing a fraudulent application does not reproduce the copyrighted works; distribute copies to the public; perform the work publicly; or display the work publicly. Since the copyrighted work is not a sound recording, the sixth right is not applicable. However, filing a fraudulent application could be considered "preparation" for the creation of derivative works, i.e. the second right. A stronger argument would be that filing a fraudulent application violates a copyright owner's right to <u>authorize</u> these protected actions, because filing a fraudulent application unlawfully claims that the infringer has the authority to use the copyrighted work.

Regardless of whether the date of the commencement of infringement is the date of the fraudulent application or the date that the Defendant began performing the infringing work in public, the infringement commenced while the work was still unpublished. Even if the Plaintiff were to argue that the work was published on these dates, there is no way that this hypothetical date of first publication occurred within three months of the effective date of registration, October 31, 2017.

In short, the Plaintiff has failed to provide a cogent argument as to why 17 U.S.C. § 412 should not apply to her case. Similarly, the Plaintiff has failed to provide any support for the argument that her case comports with the confines of § 412 and that she is entitled to statutory damages and attorney's fees, in light of the constraints stipulated by that statute. While this statute does leave open the possibility of actual damages, the Plaintiff has said in court that she has opted

14

to seek statutory damages from the Court, rather than actual damages [23, at p. 17, ln. l.16 to p. 19, ln. l.9].

### B. The Court Lacks the Power to Invalidate a Copyright Registration But Determines Ownership of a Copyright in Favor of the Plaintiff and Directs the Defendant to Request from the Copyright Office that the Office Cancel the Defendant's Registration

The Court is empowered to determine ownership of the copyright for the song "Shake Rag" and it has done so through its Order Granting Default Judgment in favor of the Plaintiff. However, the Court lacks the power to nullify a copyright registration. *See supra* Part III.B. Additionally, the law requires this Court to seek counsel from the Register of Copyright to determine whether the fraudulent information would have caused the Register to refuse to register the Defendant's copyright. *Id.* The Court has done this as well [26]. The Copyright Office has informed the Court, in a letter responding to the Court's request for counsel from the Office, that "[h]ad the Office been aware at the time the application was filed that Green-Stubbs was neither the author nor the owner of any exclusive rights in the Musical Work, it would not have issued her a registration for the Musical Work" [27]. Thus it is clear that the Copyright Office agrees with the Court's determination discussed above that the Defendant is not entitled to her copyright registration.

It is within the power of this Court to order the Defendant to request from the Copyright Office that it cancel her copyright registration. *See* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 1807.4(E) (3d ed. 2017). Additionally, the Court presumes that the Register, after being made aware of the issues in this case, will begin its own process of cancelling the Defendant's copyright registration, as discussed in 37 C.F.R. § 201.7(c)(4). The Plaintiff can seek clarification from the Copyright Office regarding the status of this copyright registration, and

whether the Office has begun the cancellation process independent of the Defendant, after being made aware of the facts of this case by this Court through its request for an opinion.

## V. Conclusion

For the reasons stated above, this Court finds that:

(1) The Plaintiff is the owner of the copyright for the words to the song "Shake Rag";
(2) The Defendant infringed on the Plaintiff's copyright;
(3) The Defendant fraudulently acquired a copyright registration from the U.S. Copyright Office for the Plaintiff's copyright;
(4) The Court lacks the power to cancel the Defendant's copyright registration directly but can order the Defendant to request from the Copyright Office that it cancel her copyright registration;
(5) The Plaintiff is entitled to injunctive relief;
(6) The Plaintiff has failed to demonstrate why 17 U.S.C. § 412 does not apply in this case;
(7) The Plaintiff is not entitled to statutory damages;
(8) The Plaintiff has neither requested nor presented any evidence of actual damages; and
(9) The Plaintiff is entitled to an award of court costs, to be paid by the Defendant.

An order in accordance with this opinion shall issue this day detailing the injunctive relief for the Plaintiff and ordering the Defendant to act toward cancelling her copyright registration.

THIS, the 12th day of January, 2021.

_____
SENIOR U.S. DISTRICT JUDGE

16